A.L. MOYE, Administrator of the Estate of Milton Ray Moye, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 88–878–CIV–5–BO.

United States District Court, E.D. North Carolina, Raleigh Division.

April 13, 1990.

Knox V. Jenkins, Jr., Jenkins & Hinton, Smithfield, N.C., William D. Spence, Kinston, N.C., for plaintiff.

Stephen A. West, Asst. U.S. Atty., Raleigh, N.C., for defendant.

ORDER

TERRENCE WILLIAM BOYLE, District Judge.

This matter comes before the court upon the defendant's motion for summary judgment. For the reasons stated below, the motion is granted.

## I.

This is a civil action brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The plaintiff, administrator of the estate of Milton Ray Moye, alleges that Mr. Moye's death was caused by a government employee's negligence. Specifically, the plaintiff claims that medical personnel employed by the United States Veteran's Administration were negligent in diagnosing, treating, or otherwise controlling the decedent's son, Milton Douglas Moye, a voluntarily committed patient with dangerous propensities. In addition, the plaintiff asserts that medical personnel failed to warn the decedent of his son's dangerous propensities, thereby endangering the decedent's life.

The plaintiff exhausted his administrative remedies as required by 28 U.S.C. § 2675, and this action is properly before the court. During the discovery period, the defendant served the plaintiff with its first set of interrogatories, requests for admission, and production of documents. The plaintiff failed to respond within the thirty-three days prescribed by Federal Rules of Civil Procedure 36(a) and 6(e), and accordingly, all facts contained in those documents are now deemed conclusively established for purposes of this motion.

## II.

Milton Douglas Moye joined the United States Navy in June, 1981. While in the Navy, he used both marijuana and alcohol. After a serious automobile accident in late 1982, Navy doctors examined and diagnosed Milton Douglas Moye as having a serious, chronic personality disorder, combined with paranoia and alcohol dependency. In July 1983, he was medically discharged from the Navy, and he immediately entered the Veteran's Administration Medical Center in Durham, North Carolina, where he remained from July 5, 1983 to August 26, 1983. During that time, the decedent and his wife attended family conferences with their son, but eventually discontinued them.

From August 26, 1983 to August 27, 1985, Milton Douglas Moye continued outpatient therapy with Dr. Roy Stein at the V.A. Medical Center. He was voluntarily hospitalized for two periods of treatment at the V.A. Medical Center—August 25, 1985 to September 21, 1985 and November 5, 1985 to November 17, 1985. At that time the V.A. staff determined that Milton Douglas Moye had a personality disorder which was not being helped by anti-psychotic or neuroleptic drugs.

During the time his son was undergoing treatment by the V.A. staff, the decedent never sought the involuntary commitment of his son, nor did he inform the police or hospital staff of his son's violent propensities or bizarre behavior.

On November 17, 1985, Milton Douglas Moye was discharged without medication from the V.A. Medical Center, at which time he entered the CaraMore private facility for an indefinite stay. At that time, neither the decedent nor his son asked the V.A. Medical Center to retain control or commit Milton Douglas Moye for further treatment.

On November 25, 1985, the CaraMore staff asked Milton Douglas Moye to leave the facility for non-compliance with their directives. After refusing an offer of medication, the decedent and his wife took their son back home to Raleigh, North Carolina. On December 7, 1985, shortly after taking up residence at the local YMCA, Milton Douglas Moye visited his parents at their home, at which time he shot and killed them both.

## III.

In general, the United States maintains sovereign immunity from tort actions brought by private individuals. *United States v. Orleans*, 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). However, the FTCA provides that the United States may be subject to suit and liability in tort for the personal injuries caused by the negligent acts of government employees acting within the scope of their employment, in the same manner as a private individual. 28 U.S.C. § 2674. The FTCA does not create new causes of action, but merely imposes liability for torts al-

ready enumerated under state law. *Richards v. United States*, 369 U.S. 1, 6, 82 S.Ct. 585, 589, 7 L.Ed.2d 492 (1962). Therefore, North Carolina substantive law determines the existence and scope of liability in this action.

In order to recover in a negligence action under North Carolina law, a plaintiff must show an actionable duty, a breach of that duty, actual and proximate causation, and damages. *Southerland v. Kapp*, 59 N.C. App. 94, 95, 295 S.E.2d 602 (1982). The plaintiff in this action presents three claims—failure to control Milton Douglas Moye, failure to warn the decedent of Milton Douglas Moye's dangerous propensities, and failure to provide adequate and proper care to Milton Douglas Moye. The court will address each claim *seriatim*.

■ Plaintiffs contend that the defendants breached a duty to properly evaluate and treat Milton Douglas Moye in accordance with the prevailing standard of care of the psychiatric profession. Specifically, the plaintiff claims that the V.A. personnel disregarded the patient's prior medical treatment, removed necessary medication, and ignored the fact that he functioned adequately while institutionalized yet regressed after release. These claims focus on the medical staff's treatment of Milton Douglas Moye—not the decedent, and to the extent they allege a medical malpractice claim, they are denied. The plaintiff must establish a physician-patient relationship between the decedent and the defendant medical personnel "before any duty of care may be imputed to the defendant." *Willoughby v. Wilkins*, 65 N.C.App. 626, 631, 310 S.E.2d 90 (1983). In the absence of such a relationship, the court will not recognize these claims.

■ The remaining claims articulated by the plaintiff maintain that a special relationship existed between the defendant medical personnel and the patient which gave rise to a duty on the part of the defendants to protect third persons, including the decedent, from harm, either by committing or admitting Milton Douglas Moye for inpatient care and treatment, warning the decedent of his son's dangerousness, or exercising some other form of control over him. These claims are con-

trolled by the Fourth Circuit's holding in *Currie v. United States*, 836 F.2d 209 (4th Cir.1987), and this court's holding in *Cantrell v. United States*, 735 F.Supp. 670 (E.D.N.C.1988).

Under North Carolina law, medical personnel have no duty to seek the involuntary commitment of a patient. *Currie*, 836 F.2d at 212. Moreover, absent an involuntary commitment order, medical personnel have no duty to control the actions of a patient, even one who has been voluntarily committed. *Cantrell* at 673–674 (citing *Hasenei v. United States*, 541 F.Supp. 999 (D.Md. 1982)). In this case, Milton Douglas Moye's treatment, inpatient and outpatient, was administered exclusively on a voluntary basis. He was never involuntarily committed, and no one, including the decedent, ever attempted to have him involuntarily committed. Therefore, the V.A. personnel had no duty to either control or commit him.

In *Currie*, the Fourth Circuit did not specifically determine whether, under North Carolina law, medical personnel have a duty to warn third persons of a patient's dangerous propensities. However, assuming *arguendo* that such a duty does exist, the duty did not arise in this situation. The decedent was fully aware that his son was dangerous and had been for some time. Through his consultations with medical personnel and through his own personal observation, the decedent understood his son's record of violent and aberrant behavior. Consequently, in this situation where the foreseeable victim knew of the danger associated with the patient, the V.A. Medical Center had no duty to warn the decedent. *Cantrell* at 674.

Since the defendant owed no duty to the plaintiff, as a matter of law the plaintiff has failed to establish a prima facie claim of negligence. Accordingly, the defendant's motion for summary judgment is hereby GRANTED.

SO ORDERED.