Anna **ROUSEY, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil A. No. 95–151.**

United States District Court,
E.D. Kentucky,
Lexington.

Feb. 13, 1996.

---

C. David Emerson, Emerson & Bayer, Lexington, KY, for Anna Rousey.

Jane E. Graham, Thomas Lee Gentry, U.S. Attorney's Office, Lexington, KY, for United States.

## MEMORANDUM OPINION AND ORDER

FORESTER, District Judge.

### I. Introduction

Currently pending before the Court is the United States' motion for summary judgment. By agreement of the parties, the Court ordered that this action be held in abeyance pending the disposition of this motion. The motion having been fully briefed, it is ripe for review.

### II. Background

This litigation stems from the November 9, 1991, shooting in which Robert Daigneau ("Daigneau") shot and killed four of the six occupants of a 1991 Lincoln Continental owned and operated by Fred Marion Alsman before killing himself. Those killed in the shooting include the plaintiffs Palmer Lee Rousey and Fred Marion Alsman, Thomas Bannister, and Robert Daigneau's wife, Donna Daigneau. Plaintiff Anna Rousey and Rita McGlone survived the shooting.

Robert Daigneau had been discharged from the V.A. Medical Center in Togus, Maine ("VAMC–Togus") on October 18, 1991, twenty-two days prior to the shooting.

Plaintiff Anna Rousey, individually and as Administratrix for the estates of Palmer Lee Rousey and Fred Marion Alsman, filed administrative tort claims with the Department of Veterans Affairs on November 4, 1993. Following an investigation, these claims were denied on February 28, 1995. Thereafter, having exhausted their administrative remedies, plaintiffs filed the current lawsuit in this Court under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680.

### III. Plaintiffs' Complaint

Plaintiffs' complaint alleges that Robert Daigneau was negligently discharged from VAMC–Togus, and that the V.A.'s negligence was the proximate cause of the November 9th shootings. Specifically, plaintiffs' complaint alleges the following:

### GENERAL CLAIMS OF NEGLIGENCE

14. The physicians and health care providers at VAMC–Togus, at the time Robert Daigneau was discharged on October 18, 1991, knew or should have known of Robert Daigneau's violent tendencies and potential for harming others, including his estranged wife (Donna Daigneau) and those around her. Robert Daigneau's medical records specifically contained information regarding his violent and criminal history as well as documenting his propensity to commit further acts of violence.

15. On and before October 11, 1991, the employees and agents of the VAMC–Togus owed a duty to third parties, including the Plaintiffs herein, not to discharge Robert Daigneau from the VAMC–Togus into the general population where he posed a serious risk of harming himself of (sic) third parties, including the Plaintiffs herein, when they knew or should have known of his violent propensities.

16. In failing to properly treat and in discharging Robert Daigneau on October 18, 1991, the Defendant through its employees violated regulations and directives

and otherwise deviated from the standard of care pertaining to the discharge of mental patients.

## COUNT I

17. During the admission in question of Robert Daigneau, the physicians and other health care providers (including the physicians' assistants), failed to properly provide for the treatment of the medical and psychiatric problems of Robert Daigneau, including the failure to require further confinement at VAMC–Togus.

The remaining paragraphs and counts of plaintiffs' complaint allege that as a direct and proximate result of the negligence, carelessness, and professional neglect of Defendant's employees, plaintiff Anna Rousey suffered injuries, while the other two plaintiffs were fatally injured and their estates suffered losses.

## IV. Defendant's Motion for Summary Judgment

The United States moved for summary judgment pursuant to Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), arguing that the plaintiffs do not have standing to assert the tort claims alleged in their amended complaint, and that the defendant owed no duty to the plaintiffs.

The defendant contends that Robert Daigneau voluntarily admitted himself to the 28 day Post Traumatic Stress Disorder ("PTSD") program at VAMC–Togus on September 20, 1991. On October 17, 1991, following an outburst in which Daigneau threw an ashtray across the floor and held his fist in a threatening manner, Daigneau was asked to leave. At the time Daigneau was discharged from VAMC–Togus on October 18, 1991, defendant contends he was offered other treatment options. Specifically, according to the Declaration of Dr. William Sullivan, Daigneau could have chosen to be transferred to the observation unit. Instead, Daigneau chose the other option and decided to be treated as an outpatient at VAMC–Lexington.

The United States contends that the plaintiffs have asserted two theories of liability in this case: a negligent failure to involuntarily hospitalize Daigneau, and negligent treatment of him by the V.A. medical staff.

■ Under the Federal Tort Claims Act, the United States is liable for the torts of its employees only to the extent that a private person would be liable to the claimant under the law of the place where the tortious acts or omissions occurred. *See* 28 U.S.C. §§ 1346(b), 2674. The incidents involved in the instant action occurred in Maine.

## A. Negligent Failure to Involuntarily Hospitalize Daigneau

Defendant contends that the issues presented in this case have not been addressed in Maine. However, Maine courts that have addressed a fact pattern similar to the present action involving state employees and facilities have found immunity from liability based on the discretionary function exemption of the Maine Tort Claims Act. While the United States notes that it is not making an argument based on the discretionary function exemption of the Federal Tort Claims Act, in order to provide insight into how the Maine Supreme Court might view the liability of VAMC–Togus in this case defendant directs the Court to language in *Darling v. Augusta Mental Health Institute*, 535 A.2d 421 (Me.1987), which explains the rationale behind applying the discretionary function exception. Specifically, the court in *Darling* stated the following:

> If release decisions were exposed to the threat of liability those individuals charged with rendering those decisions would likely become unduly responsive to one consideration—the cost of liability. Moreover the threat of liability would undermine a statewide policy favoring open door treatment rather than custodial detention of the state's mentally ill.

*Id.* at 429.

Defendant also directs the Court to several Circuit Court decisions concerning this issue. In *Sellers v. U.S.*, 870 F.2d 1098 (6th Cir. 1989), a V.A. hospital in Michigan was sued for negligent discharge, negligent outpatient treatment, and negligent failure to warn the public arising from the V.A.'s release of Allen

Firestine, a voluntary patient who killed Sellers after being discharged. The *Sellers* court declined to find a duty on the part of the V.A. to involuntarily confine the patient, holding that no special relationship exists between a psychiatrist and a voluntary patient that would give rise to a duty to confine. The court stated:

> [I]n that Firestine was a voluntary patient at the VAH (VA hospital), the case law is clear that the hospital did not have a "special relationship" which would support a duty on the part of the VAH to have forced him to remain confined. Thus, not only did the hospital owe no duty to Sellers because he was not readily identifiable, but his voluntary status meant that the VAH did not have a "special relationship" with Firestine on which to base a duty to keep him confined.

*Sellers* at 1104.

Defendant also contends that due to the "greater indefiniteness, and thus decreased foreseeability with regard to psychological, as opposed to physical, illness," *Id.* at 1100, the *Sellers* court found a difference in the duties imposed on psychiatrists and those imposed on physicians. In addition, it is argued that the *Sellers* court considered the policy argument that patients need to be encouraged to express their feelings of violence for their own therapeutic benefit.

The defendant also cites *Currie v. U.S.*, 836 F.2d 209 (4th Cir.1987), a similar case in which plaintiffs brought a wrongful death suit against a North Carolina V.A. hospital for failure to involuntarily commit a patient who killed the victim in a shooting spree at his place of work. The Fourth Circuit, relying on the general tort concept that one is not liable for the conduct of a third person unless one has the right to control the conduct of that individual, found that no duty to commit existed. Had the patient been an involuntarily committed patient, then the hospital would have had the right to control the patient and the V.A. might have been held liable. However, the *Currie* court declined to extend liability, stating:

> The plaintiff thus contends that Avery was subject to involuntary commitment and that the psychiatrists were negligent in not having sought to accomplish it. All that, we think, is quite beside the point, for the plaintiff has not established any duty on the part of the psychiatrists to seek and obtain for themselves the right and the power to control Avery's conduct or to have him confined under the control of others.

*Currie* at 212.

Finally, the defendant cites *Hokansen v. U.S.*, 868 F.2d 372 (10th Cir.1989), which involved a patient voluntarily admitted to a V.A. hospital in Kansas who, like Daigneau, continued outpatient treatment after discharge. About a month after ending his outpatient treatment, the patient shot his former girlfriend and some of those with whom she lived. There had been no previous threats against any of them, and with the exception of the girlfriend, no connection between the patient and the victims. The injured survivor and the estates of the victims sued under a theory of negligent release. Summary judgment was granted to the defendants on the theory that no duty to prevent the patient's release was owed to the victims. Employing the same reasoning found in *Sellers* and *Currie*, the Tenth Circuit affirmed.

In this case, defendant contends that because of Daigneau's status as a voluntary patient, the majority of courts throughout the U.S. would refuse to find that a special relationship existed between Daigneau and VAMC–Togus that would give rise to a duty to involuntarily commit Daigneau. Imposing upon psychiatrists a duty to third parties to involuntarily commit voluntary patients, argues the defendant, would undermine the treatment goals of hospitals, encourage doctors to involuntarily commit every patient that showed the slightest sign of violence, discourage patients from seeking voluntary treatment, and undermine the psychiatrist-patient relationship by discouraging patients from expressing their feelings. Therefore, defendant contends that the Court should conclude that VAMC–Togus owed no duty to the plaintiffs to involuntarily commit Daigneau.

## B. Negligent Treatment of Daigneau

Defendant contends that the claim that Daigneau received negligent treatment amounts to a claim of medical malpractice. In this case, defendant contends that the plaintiffs lack standing to assert such a claim, because the duty of a treating physician to adhere to a non-negligent standard of care runs only to the patient, not to third parties.

While defendant claims that no Maine statute or case deals directly with this issue, defendant cites a U.S. District Court case from North Carolina that considered a similar claim. In *Moye v. U.S.*, 735 F.Supp. 179 (E.D.N.C.1990), Milton Douglas Moye, a patient voluntarily admitted to the V.A. hospital, killed his parents shortly after discharge. The parents' estate filed suit against the V.A., alleging failure to provide adequate care, failure to warn, and failure to control the patient. Concerning the claim of failure to provide adequate care, the court stated:

> These claims focus on the medical staff's treatment of Milton Douglas Moye—not the decedent, and to the extent they allege a medical malpractice claim, they are denied. The plaintiff must establish a physician-patient relationship between the decedent and the defendant medical personnel "before any duty of care may be imputed to the defendant." *Willoughby v. Wilkins,* 65 N.C.App. 626, 631, 310 S.E.2d 90 (1983). In the absence of such a relationship, the court will not recognize these claims.

*Moye* at 181.

In this case, defendant contends that the duty owed was to Daigneau, not to these plaintiffs who did not possess a physician-patient relationship with the V.A. hospital. Therefore, defendant asserts that the plaintiffs cannot maintain an action for negligent treatment in this case.

### V. Plaintiffs' Response

In response to defendant's motion, plaintiffs contend that Daigneau did not leave VAMC–Togus voluntarily. Rather, plaintiffs assert that Daigneau, despite his desire to remain, was ordered to leave due to his violent outbursts. In support of this argument, plaintiffs rely on the affidavit of Herbert Clegg, a former patient at VAMC–Togus who knew Daigneau.

Plaintiffs also assert that it is not disputed that VAMC–Togus made no efforts to notify Donna Daigneau or the authorities that Robert Daigneau was returning to Kentucky, although the records indicate that V.A. personnel knew that Daigneau was having problems with his wife.

### A. Plaintiffs' Arguments Concerning Duty

Plaintiffs contend that the "involuntary commitment" cases cited by the defendants are inapplicable to this case because the "duty to confine" a patient involuntarily is not in issue because Daigneau was not voluntarily released. Rather, plaintiffs contend Daigneau's situation involved the compulsory discharge of a patient who wished to stay at the hospital.

Plaintiffs argue that in this case, VAMC–Togus owed a duty to the plaintiffs to take necessary precautions to protect Daigneau's potential victims from a foreseeable risk of harm. Plaintiffs cite *Lipari v. Sears, Roebuck & Co.*, 497 F.Supp. 185 (D.Neb.1980), in which the court found that under Nebraska law, the relationship between a psychotherapist and his patient gave rise to a duty for the psychotherapist to protect potential victims of a patient known to have dangerous propensities. In reaching this conclusion, the court employed an analysis derived from § 315 of the Restatement (2nd) of Torts, under which an actor has a duty to control the conduct of a third person to prevent physical harm to another if:

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or

> (b) a special relation exists between the actor and the other which give to the other a right to protection.

*Lipari* at 188. The court also relied upon *Tarasoff v. Regents of the University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976), and *McIntosh v. Milano*, 168 N.J.Super. 466, 403 A.2d 500 (1979).

In *Tarasoff*, the California Supreme Court found that the special relationship between a psychotherapist and patient was sufficient to impose an affirmative duty upon the therapist to warn a readily identifiable decedent of the patient's statements that he intended to kill her, stating:

> [O]nce a therapist does in fact determine, or under applicable professional standards reasonably could have determined, that a patient possesses a serious danger of violence to others, he bears a duty to exercise reasonable care to protect the foreseeable victim of that danger.

*Tarasoff* at 131 Cal.Rptr. at 25, 551 P.2d at 345.

In *McIntosh v. Milano*, the New Jersey Superior Court analyzed § 315 and concluded that a psychiatrist who should have known that his patient posed a threat to the decedent was under a duty to warn the potential victim or authorities of the danger. The *Milano* court drew an analogy from the duty imposed on physicians to warn third persons against exposure to a contagious disease. '

Applying the rule from these two cases, the *Lipari* court determined that under Nebraska law a psychiatrist owes the same duty of due care. The court also concluded that the specific plaintiffs need not be identifiable. Rather, it is enough if the V.A. hospital could have reasonably foreseen an unreasonable risk of harm to the plaintiffs or a class of persons of which the plaintiffs were members.

In this case, while Maine has not expressly adopted § 315, plaintiffs contend that Maine courts have recognized a duty to a class of third persons which arises out of the physician-patient relationship. Plaintiffs cite *Joy v. Eastern Maine Medical Center*, 529 A.2d 1364 (Me.1987), a case where a patient wearing an eye patch collided with a motorcyclist while driving. The injured motorcyclist sued the hospital for negligently failing to warn the patient not to drive. The Supreme Judicial Court of Maine found that the duty to warn the patient not to drive extended to the driving public as well as the patient. Thus, plaintiffs argue that Maine has recognized that the special relationship between a physician and patient can give rise to a duty to control the patient's conduct for the benefit of others.

Plaintiffs also point out that Maine has a statute requiring physicians to notify the Maine Department of Human Services whenever the physician has reason to believe a patient is infected with a communicable disease. In addition, plaintiff argues that Maine law is clear that the victim of harm only need be a member of a class of persons to whom an unreasonable risk of harm is posed by the negligent conduct.

In this case, plaintiffs argue that Donna Daigneau was a foreseeable victim, and Robert Daigneau had repeatedly asserted in front of V.A. personnel his violent intentions toward his wife. Therefore, the plaintiffs in this case argue that by their proximity to Donna Daigneau, they were a foreseeable class of victims whom VAMC–Togus personnel were under a duty to protect. This duty included warning Donna Daigneau, the identifiable victim, or the authorities that Robert Daigneau was in the area. In addition, plaintiffs contend there was a duty not to commit the act of involuntarily discharging Daigneau, the action that led to his presence in Kentucky.

**B. Plaintiffs' Arguments Concerning Standing**

Plaintiffs argue that defendant has mischaracterized this action as a medical malpractice action. Plaintiffs contend, however, that this case is an ordinary negligence action. In this case, plaintiffs argue that the standard of care owed them by the V.A. physicians arises not from the contractual duty to provide adequate medical care to Daigneau, but from the duty not to subject reasonably foreseeable classes of victims to unreasonable risks of harm.

In conclusion, plaintiffs argue that the issue in this case is not involuntary commitment, but involuntary discharge. They contend that the V.A. owed a duty to control Daigneau's conduct in order to avoid an unreasonable risk of harm to foreseeable victims. Furthermore, when physicians know that a patient poses an unreasonable risk of harm to others, they are under a duty to

render the care necessary to prevent such harm, independent of any duty that arises from the contractual relationship with the patient.

### VI. Defendant's Reply

Defendant, by way of reply, clarifies that it is undisputed that Daigneau voluntarily presented himself to VAMC–Togus on September 20, 1991 and was admitted into the 28–day PTSD program. Daigneau was discharged on October 18, 1991, the 28th day of treatment. Defendant also points out that the incident of October 17 where Daigneau threw the ashtray was quickly defused, Daigneau expressed remorse for his actions afterwards, and the incident does not reflect a threat toward Daigneau, his wife, any of the plaintiffs or the general public. Finally, defendant points out that Daigneau was not abandoned at the time of discharge. Rather, contact was made with the Lexington–VA concerning continuing outpatient treatment for Daigneau.

Defendant also contends that plaintiffs' theories of liability pled in the complaint are negligent discharge and negligent treatment. Defendant asserts that plaintiffs should be limited to those two theories absent amendment of their complaint.

### A. Negligent Discharge

Defendant argues that the plaintiffs have attempted to distinguish this case from those which refused to impose a duty upon a psychiatrist to forcibly detain voluntary patients by mischaracterizing Daigneau's discharge as involuntary. Defendant contends that such a distinction is irrelevant, and plaintiffs have produced no case law drawing such a distinction.

Defendant also asserts that the allegation is factually inaccurate and unsupported by competent evidence. Defendant contends that the uncontroverted evidence establishes that after a brief outburst of temper just a few days before the expiration of his treatment program, Daigneau was offered the option of being transferred to the observation unit or being discharged and treated as an outpatient in Lexington. Plaintiffs have offered the affidavit of Herbert Clegg in support of the argument that Daigneau was not given this option of transfer to the observation unit. In his affidavit, Clegg relates conversations in which Daigneau allegedly asked to be put in the observation unit. Defendant argues that this statement is hearsay, and therefore is not evidence that would be admissible in evidence as required by Fed.R.Civ.P. 56(e). Furthermore, defendant points out that Clegg was discharged from VAMC–Togus on October 10, days before his purported conversations with Daigneau on October 16 and 17. Therefore, while the defendant acknowledges that credibility is not to be weighed in a summary judgment motion, the court is entitled to disregard patently erroneous factual allegations. *Stedman v. Hoogendoorn, Talbot,* 843 F.Supp. 1512, 1515 (N.D.Ill.1994).

Defendant also asserts that it is uncontroverted that Daigneau was not a mentally ill person subject to involuntary commitment under Maine law. Defendant argues that it cannot be impressed with a duty to retain a voluntarily admitted patient in a program with which he is uncooperative. When Daigneau exhibited inappropriate behavior on October 17, defendant contends the only options available to VAMC–Togus were to discharge Daigneau, voluntarily admit him to the observation unit, or start involuntary commitment procedures. There was no contractual authority to retain Daigneau. Because Daigneau was not mentally ill, and therefore not eligible for involuntary commitment, the only two options left were discharge or transfer to the observation unit. Daigneau chose discharge.

### B. Failure to Warn

Defendant notes that although plaintiffs' complaint does not contain an allegation of a failure to warn, plaintiffs have suggested such a violation in their memorandum. Therefore, because this suggestion is made in response to a motion for summary judgment, defendant contends that plaintiffs bear the burden of showing that such a duty arose, was owed to the plaintiffs by the defendants, and that it was a causative factor in the plaintiffs' injuries. *A.I. Root Co. v. Computer Dynamics, Inc.,* 615 F.Supp. 727

(N.D.Ohio, 1985), *aff.* 806 F.2d 673 (6th Cir. 1986) (plaintiff could not escape summary judgment in favor of defendants by raising alternative theory of recovery, but required to present evidence supporting alternative claim demonstrating existence of material fact).

Defendant argues that for an institution to be held liable for a duty to warn, there must be a credible threat to an identifiable victim. In this case, the plaintiffs were unknown to the personnel at VAMC–Togus. The only allegation of a threat by Daigneau against anybody is contained in Clegg's affidavit, which has been shown to be unreliable due to the fact that he was not even present at the institution when he claims he heard the threats. In any event, the only potential victim mentioned in the Clegg affidavit is Daigneau's wife, who is not a plaintiff in this action.

Apparently in reference to how far the duty to warn may extend, defendant contends that the Sixth Circuit has distinguished cases involving physicians, who may be impressed with a duty to a more general class of victims, and psychiatrists, who are faced with a greater difficulty in predicting patient behavior due to the inexact nature of psychiatric science. *Sellers,* 870 F.2d 1098, 1103. Therefore, the *Lipari* case cited by the defendants is diametrically opposed to the Sixth Circuit's holding that the physician/patient duty differs from the psychiatric/patient duty.

In sum, defendant contends that summary judgment is appropriate because the plaintiffs have not shown that VAMC–Togus had accepted "control" of Daigneau as anything other than a voluntary patient, who could leave the program at any time and who could be discharged for failing to abide by the rules. Plaintiffs cannot show a duty as to the propriety of the medical treatment given Daigneau or that defendant had a duty to warn the plaintiffs of Daigneau's release.

### VII. Analysis

The parties have been unable to direct the Court to Maine cases or statutes that directly address the issues presented in plaintiffs' complaint and defendant's motion for summary judgment. Therefore, this Court is confronted with the difficult task of trying to determine how the Supreme Judicial Court of Maine would resolve the issues presented herein. In light of this lack of Maine authority on the issues presented, the Court will consider the law of other jurisdictions to the extent it suggests the rule of law which Maine would be likely to adopt.

A review of plaintiffs' complaint reveals allegations that VAMC–Togus owed a duty to third parties not to **discharge** Daigneau, that the defendant's employees were negligent in **failing to properly treat** and in **discharging** Daigneau, and that the physicians and health care providers failed to **properly** treat the psychiatric problems of Daigneau, and failed to **require further confinement** at VAMC–Togus. Nowhere is it alleged that the defendant was negligent in failing to warn the plaintiffs or Donna Daigneau. Instead, the language in the complaint leads to the conclusion that plaintiffs have brought claims for negligent discharge and negligent treatment.

■ Regarding Daigneau's discharge, defendant has produced the affidavit of Dr. William Sullivan which indicates Daigneau was voluntarily admitted to a 28 day program on September 20, 1991, and at the time of discharge was presented with other treatment options, including transfer to the observation unit. The only evidence plaintiffs' have presented counter to this is contained in the affidavit of Herbert Clegg, which only disputes that Daigneau was voluntarily discharged and given the option of transfer to the observation unit. Clegg's affidavit does not dispute that Daigneau was voluntarily enrolled in a 28 day PTSD course.

The defendant, in an effort to provide insight into how the Supreme Judicial Court of Maine might view a negligent discharge case, has directed the Court to the language from the *Darling* case in which the Maine court indicated a reluctance to expose release decisions to a threat of liability. However, the only cases concerning the issue of negligent discharge are from other jurisdictions.

Plaintiffs' arguments concerning negligent discharge are for the most part based on *Lipari* and its *Tarasoff* analysis. However, as recognized in the *Sellers* case cited by

defendant, other courts have found a distinction between claims of negligent discharge and claims of negligent failure to warn. As *Sellers* indicates, negligent discharge is based on the notion that a special relationship exists between the patient and physician giving the physician the right to control the patient. In cases where the patient is voluntarily admitted, there is no special relationship because the physician cannot compel confinement. *Sellers,* 870 F.2d at 1104.

The *Currie* case cited by defendant also recognizes a distinction between negligent discharge and failure to warn claims. In that case, the court pointed out that "one is not ordinarily subject to liability for the conduct of a third person unless one has a right to control the conduct of the third person." *Currie,* 836 F.2d at 212. The court explained as follows:

> When a mentally ill person has been lawfully committed to an institution and the institution has the right and the power to continue to restrain him, a negligent failure to exercise the power, so that a person who is both mentally ill and dangerous is released to wreak violence upon innocent third persons, renders those responsible for the failure to exercise control properly subject to liability to the person suffering harm. (citations omitted).

> Such cases and the principle they exemplify have little bearing upon a situation in which the one sought to be charged had no right of control, and the complaint is that the one sought to be charged should have taken affirmative action to acquire the right of control or to have such a right vested in another.

> Nor is resolution of the problem substantially advanced by attempting to draw analogies to the duty to warn threatened third persons such as that declared in *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). The duty to warn is an expression of humanitarianism and the spirit of the good Samaritan. It runs only to identifiable persons within a recognizable zone of danger, and little resembles a general responsibility for a third person's conduct. A duty to commit, if there is

such a duty, runs to all persons suffering foreseeable harm, whether or not those persons are subject to identification in advance. A duty to warn potential, identifiable victims of violence is not dependent upon a power of control of the conduct of the violent actor, but a duty to seek voluntary commitment necessarily treats the one subject to the duty as having the essence of the power to control.

*Id.* at 212–13. Therefore, a reading of these cases leads to the conclusion that the claims are distinct and a doctor could be liable for a failure to warn even though not liable for negligent discharge.

In this case, the allegations in plaintiffs' complaint concern defendant's discharge and treatment of Daigneau, not an alleged failure to warn. Therefore, the Court is convinced that plaintiffs' claims are for negligent treatment and negligent discharge. In light of the reasoning expressed in *Sellers* and *Currie,* the Court is of the opinion that the Supreme Court of Maine would likewise recognize the distinction between a negligent discharge claim and a claim for failure to warn. Therefore, given the undisputed evidence that Daigneau was a voluntarily admitted patient who was not mentally ill, the Court is persuaded that Maine would find that there was no special relationship between the medical personnel at VAMC–Togus and Daigneau which would give rise to a duty to force Daigneau to remain confined. This conclusion is further supported by the Supreme Judicial Court of Maine's apparent reluctance to expose such release decisions to liability. Given this reluctance, the Court finds it unlikely that Maine would impose upon VAMC–Togus personnel a duty to confine a voluntarily admitted patient. Thus, because there is no duty owed to third parties to involuntarily confine a voluntary patient, there can be no claim for negligent discharge.

■ To the extent that plaintiffs' claims are based on negligent treatment, the claims are for medical malpractice. Therefore, to maintain these claims, plaintiffs must establish a physician-patient relationship before any duty of care may be imputed to the defendant. In this case, there is no dispute

that the plaintiffs had no such physician-patient relationship. Therefore, they lack standing to assert that Daigneau received negligent treatment in this case.

Although the Court has determined that plaintiffs' claims in this case are for negligent discharge and negligent treatment, and not failure to warn, the Court nevertheless concludes that even if plaintiffs had brought claims for failure to warn they would not be entitled to relief. In opposing defendant's motion, plaintiffs have argued that the personnel at VAMC–Togus had a duty to warn Donna Daigneau of possible danger from her husband. Relying on *Lipari*, plaintiffs would have the court interpret the duty as including not simply warning Daigneau's wife, but also taking affirmative steps to prevent Daigneau's release. Additionally, plaintiffs would have the Court extend the duty owed to the plaintiffs in this action.

However, the duty owed by the psychiatrist is generally to protect the foreseeable victim of the danger and it only arises when the psychiatrist knows, or reasonably should know, that the patient presents an unreasonable risk of harm to others. In this case, assuming that plaintiffs' claims are that the VAMC–Togus personnel failed to use reasonable care to protect third persons from Daigneau's harmful acts, the potential victims still must have been known to the defendant. Even accepting Clegg's affidavit as proving that Daigneau repeatedly threatened in the presence of VAMC–Togus personnel to kill his wife, it is undisputed that the plaintiffs in this action were unknown to the personnel at VAMC–Togus and the only threats were directed at Donna Daigneau.

Based on *Lipari*, plaintiffs would have the Court determine that they were foreseeable victims of Robert Daigneau because of their proximity to Daigneau's wife. In *Lipari*, the court determined that liability would extend to those foreseeably endangered by the negligent conduct. *Lipari*, 497 F.Supp. at 194. However, this Court is more persuaded by the reasoning in *Sellers*, which recognized a distinction between a physician's duty and a psychiatrist's duty to the public at large due to the "relatively inexact" science of psychiatry and the greater difficulty in predicting, and thus foreseeing, the behaviour of psychiatric patients. *Sellers*, 870 F.2d at 1103. Therefore, even had plaintiffs' claims been for failure to warn, the Court finds that the defendant owed no duty to them because they were not readily identifiable.

### VIII. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that the defendant's motion for summary judgment [DE # 10] is **GRANTED,** and summary judgment will be entered contemporaneously with this opinion and order in favor of the defendant.