106 F.3d 408
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Larry LACOCK, Plaintiff-Appellant,
v.
UNITED STATES of America (Department of Veterans Affairs),
Defendant-Appellee.
 No. 95-35778.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 10, 1997.
Decided Jan. 15, 1997.
 
 Before: WRIGHT, CANBY and TASHIMA, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 This case requires us to decide whether, under Montana law, the Veterans Administration owed a duty of care to a third person who was shot and injured by one of its patients. We hold that it did not.
 
 BACKGROUND:
 
 3
 On February 27, 1990, Clifford Harper shot and wounded Larry Lacock at a restaurant in Missoula, Montana.[1] The police then shot Harper, killing him.
 
 
 4
 Harper was a Marine veteran who had been treated since 1982 for physical and mental service-connected disabilities. He had been diagnosed with schizotypal personality disorder and delayed Post Traumatic Stress Disorder (PTSD), but was found competent. Dr. Shea, a private clinical psychologist who treated Harper on an outpatient basis from 1987 to 1990, found him "potentially very dangerous to himself and others," but did "not see this veteran as overtly dangerous to others." His primary concern was that others would incorrectly perceive Harper as dangerous and would "back him into a corner." He did not predict that Harper would use firearms or engage in unprovoked violence.
 
 
 5
 Dr. Johnson, a VA surgeon, performed a subtotal thyroidectomy on Harper in 1990 to treat his Graves disease. He also prescribed 20 Halcion tablets. Harper did not make any threats or exhibit any troubling behavior while at the VA hospital. He shot Lacock three weeks later.
 
 
 6
 Lacock sued the VA under the Federal Tort Claims Act (FTCA), alleging that it negligently treated Harper and failed to warn or to protect the public from him. The district court granted the government's motion for summary judgment, and we affirm.
 
 ANALYSIS:
 
 7
 This court reviews de novo a grant of summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996).
 
 
 8
 The FTCA waives sovereign immunity for suits against the United States alleging negligence by government employees acting within the scope of their employment. 28 U.S.C. § 2674; United States v. Orleans, 425 U.S. 807 (1976). The FTCA imposes liability to the same extent that private persons would be liable under state law. Richards v. United States, 369 U.S. 1, 6 (1962). Montana law governs this case.
 
 
 9
 To establish negligence under Montana law, Lacock must show a duty, breach, actual and proximate causation, and damages. Gibby v. Noranda Minerals Corp., 905 P.2d 126, 132 (Mont.1995). He cannot show that the VA owed him a duty of care.
 
 
 10
 The existence of a duty is a question of law. Gibby, 905 P.2d at 128. As a general rule, a person has no duty to prevent a third party from causing physical injury to another. Some courts have recognized an exception to this general rule. Tarasoff v. Regents of University of Cal., 551 P.2d 334, 342-43 (Cal.1976). Tarasoff was the first to hold that a therapist may be liable to a third person for failure to warn of a danger posed by his patient. "When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents a serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger." Id. at 340.
 
 
 11
 Two separate causes of action have emerged after Tarasoff: (1) failure to warn and (2) failure to control. In a failure to warn case, the foreseeability that his patient will harm a particular person gives the defendant a duty to warn or otherwise protect the foreseeable victim. In a failure to control case, the defendant has a special relationship with the patient that gives him a duty to control the patient. Breach of this duty gives rise to a claim by anyone harmed by the patient where that harm was foreseeable. Lacock's claims fail under both theories.
 
 I. FAILURE TO WARN
 Montana has codified the duty to warn:
 
 12
 A mental health professional has a duty to warn of or take reasonable precautions to provide protection from violent behavior only if the patient has communicated to the mental health professional an actual threat of physical violence by specific means against a clearly identified or reasonably identified victim.
 
 
 13
 Mont.Code Ann. § 27-1-1101.[2] Neither Dr. Johnson nor Harper's regular psychiatrist reported an actual threat that would satisfy this statute.
 
 
 14
 Assuming without deciding that the common law cause of action for failure to warn remains, Lacock still cannot recover for failure to warn. As with the statute, the common law requires a specific threat against a specifically or reasonably identifiable victim.[3] See Thompson v. County of Alameda, 614 P.2d 728 (Cal.1980); Brady v. Hopper, 570 F.Supp. 1333 (D.Colo.1983); Jablonski by Pahls v. United States, 712 F.2d 391 (9th Cir.1983).
 
 
 15
 Lacock urges that we hold that the VA should have warned the public at large of Harper's potential for harm. The Montana Supreme Court rejected a similar suggestion in VanLuchene v. State, 797 P.2d 932 (Mont.1990), which held that the state did not have a duty to warn the public of a sex offender who was released from prison and later killed a Montana boy. Such a warning would have been ineffective, and the law did not require the state to attempt it. Id. at 936. VanLuchene indicates that Montana would not impose on the VA a duty to warn the public of all potentially dangerous outpatients.
 
 II. FAILURE TO CONTROL
 
 16
 Failure to control the actions of a dangerous person creates a duty of care to third persons only under limited circumstances. All jurisdictions that have considered the issue impose on a physician the duty to control his patient only if, under a reasonable standard of care, he: (1) should have known that the patient posed a threat to the community, and (2) had the legal right to control the patient. See Sellers v. United States, 870 F.2d 1098 (6th Cir.1989) (Michigan law); Hokansen v. United States, 868 F.2d 372 (10th Cir.1989) (Kansas law); Currie v. United States, 836 F.2d 209 (4th Cir.1987) (North Carolina law); Semler v. Psychiatric Institute of Washington, D.C., 538 F.2d 121, 124 (4th Cir.1976) (Virginia law); Rousey v. United States, 921 F.Supp. 1550 (E.D.Ky.1996); Moye v. United States, 735 F.Supp. 179 (E.D.N.C.1990); Lipari v. Sears, Roebuck & Co., 497 F.Supp. 185 (D.Neb.1980); Hamman v. County of Maricopa, 775 P.2d 1122 (Ariz.1989); Petersen v. State, 671 P.2d 230 (Wash.1983); Restatement (Second) of Torts, § 319 (1965) ("One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.").
 
 
 17
 Montana is likely to follow this rule. In Phillips v. City of Billings, 758 P.2d 772 (Mont.1988), the Montana Supreme Court considered whether a police officer had a duty to control the actions of a slightly intoxicated man whom he had observed standing next to a car and who later injured a third person in a traffic accident. The officer lacked probable cause to detain or arrest the suspect. Because he could not control the suspect's actions, he did not owe the injured third party a duty to control him. Id. at 775.
 
 
 18
 Similarly, the VA lacked the legal ability to control Harper's actions.[4] It could obtain an involuntary commitment order only if he was "seriously mentally ill." Mont.Code Ann. 53-21-102. A serious mental illness is defined by Montana law as (1) a mental disorder that (2) has resulted in self-inflicted injury or physical injury to another or imminent threat thereof. Mont.Code Ann. § 53-21-102; In re F.B., 615 P.2d 867 (Mont.1980). The party petitioning for commitment must prove these elements beyond a reasonable doubt.
 
 
 19
 Lacock has produced no evidence that would have supported a commitment order against Harper.[5] Because the VA lacked the right to control him, it had no duty to do so.
 
 III. NEGLIGENT TREATMENT
 
 20
 Lacock challenges the quality of care the VA provided to Harper by arguing that it negligently prescribed Halcion. Even if this were true, it could not alone create a duty to warn or to control. To the extent that Lacock contends that the prescription was malpractice, he lacks standing to assert the claim. The duty to provide a certain standard of medical care exists only within a patient-physician relationship. See Llera v. Wisner, 557 P.2d 805, 811 (Mont.1976); Mont.Code.Ann. § 27-6-103(5); Rousey v. United States, 921 F.Supp. 1550, 1558-59 (E.D.Ky.1996); Moye v. United States, 735 F.Supp. 179, 181 (E.D.N.C.1990).
 
 CONCLUSION:
 
 21
 The court held correctly that the VA did not owe Lacock a duty of care, and therefore could not be found negligent.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Harper also shot and killed an employee of the restaurant
 
 
 [2]
 We assume without deciding that the statute would apply, even though the VA did not directly provide mental health services to Harper
 
 
 [3]
 Some cases say in dictum that Tarasoff has been extended to victims who are not identifiable in advance. See, e.g., Lipari v. Sears, Roebuck & Co., 497 F.Supp. 185, 188-91 (D.Neb.1980). That is not true. Tarasoff is a failure to warn case, and no state imposes a duty to warn when there is not at least a reasonably identifiable victim. Some states impose a duty to control foreseeably violent patients, see Petersen v. State, 671 P.2d 230 (Wash.1983), and this duty does not require a specifically identifiable victim. While they may properly be viewed as the progeny of Tarasoff, it is important to distinguish between these cases and failure-to-warn cases
 
 
 [4]
 This case is not a negligent release case. Harper was a voluntary patient who had not been committed to an institution. See Currie v. United States, 836 F.2d 209 (4th Cir.1987) (describing tort of negligent release)
 
 
 [5]
 Lacock's expert, Dr. William Stratford, offered only a conclusory affidavit regarding the VA's alleged negligence. Because it does not contain any facts or evidence tending to show that Harper could have been committed, it was not sufficient to defeat summary judgment