Perley L. **SUKEFORTH**

v.

Edward **THEGEN.**

Supreme Judicial Court of Maine.

Aug. 7, 1969.

David R. Downing, Bucksport, for plaintiff.

Robert W. O'Connor, Augusta, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

WEBBER, Justice.

This was a complaint for false imprisonment. Defendant moved to dismiss on the ground that the complaint failed to state grounds upon which relief could be afforded. The motion to dismiss was granted and plaintiff appealed.

The complaint recites inter alia that defendant, a physician, without having seen or examined the plaintiff, issued a certificate that he had in fact examined the plaintiff, that in his opinion plaintiff was mentally ill and because of said illness likely to injure himself or others if not immediately restrained. The complaint avers that plaintiff was at no time insane but that, the certificate having been endorsed by a District Court judge, the plaintiff was taken into custody and confined for a period of three days at the Bangor State Hospital.

The Court below was of the view that the criminal sanction imposed by 34 M.R.S.A., Sec. 2259 for conduct such as is here alleged is exclusive and, the statute not having provided a remedy by civil action, the plaintiff is without a remedy.

The common law has always recognized and provided a remedy for false imprisonment. In earlier times the action based upon false imprisonment was in trespass. Green v. Morse (1828) 5 Me. 291, 294. "All those who, by direct act or indirect procurement, personally participate in or

proximately cause a false imprisonment or unlawful detention are liable therefor." 32 Am.Jur.2d 94, False Imprisonment, Sec. 29. The issue is not the existence or non-existence of a common law remedy but whether the defendant enjoys a protective immunity under the facts alleged which would not be available to an ordinary person who was guilty of like conduct.

34 M.R.S.A., Sec. 2333 provides for emergency admittance procedure in these terms:

"Any individual may be admitted to a hospital [for the mentally ill—Sec. 2251 (3)] upon

1. Application. Written application to the hospital by any health or police officer or any other person stating his belief that the individual is likely to cause injury to himself or others if not immediately restrained, and the grounds for such belief; and

2. Certification. A certification by at least one licensed physician *that he has examined the individual* and is of the opinion that the individual is mentally ill and, because of his illness, is likely to injure himself or others if not immediately restrained.

An individual with respect to whom such a certificate has been issued may not be admitted on the basis thereof at any time after the expiration of 3 days *after the date of examination.* * * *

Such a certificate, upon endorsement for such purpose by the District Court Judge or complaint justice within whose jurisdiction the individual is present, shall authorize any health or police officer to take the individual into custody and transport him to a hospital as designated in the application." (Emphasis ours)

 It is important to note that the physician acts pursuant to this section in a quasi-judicial capacity. He and he alone makes the determination as to whether or not the individual is mentally ill and should or should not be subjected to immediate emergency restraint. No municipal officers or court sit in judgment upon this issue. The situation is very different from that in which hospitalization is ordered by the Court after hearing pursuant to Sec. 2334. In the latter case the examining and certifying physician acts only as witness. A physician whose status is that of a witness enjoys an absolute immunity from civil liability in connection therewith. Dunbar v. Greenlaw (1956) 152 Me. 270, 128 A.2d 218; Hurley v. Towne (1959) 155 Me. 433, 156 A.2d 377. In each of these cases the commitment proceedings were by municipal officers rather than by a court, but the principle is the same. We were careful to point out that the municipal officers were constituted a judicial tribunal for that purpose.

Under Sec. 2333, however, there is no "judicial tribunal" apart from the examining and certifying physician. The District Court Judge performs a purely ministerial act in ordering custody and transportation. He holds no hearing and exercises no judgment upon the merits or the need for restraint. His role is not unlike that of the clerk of a court who in a criminal case issues a mittimus pursuant to the judgment and decision of the court. The Court below correctly determined that the defendant did not enjoy immunity as a witness and that Dunbar and Hurley did not apply.

One acting in a quasi-judicial capacity also enjoys an immunity from civil liability arising out of his acts which are a proper exercise of his discretionary and judicial functions. The applicable rule has been well stated in 32 Am.Jur.2d 125, False Imprisonment, Sec. 64 as follows:

"Therefore, no public officer whose functions are quasi-judicial in nature is liable to persons for false imprisonment based on a determination made by him within his jurisdiction, however erroneous it may be and however malicious the motives which produced it. *This immunity exists only where the officer has*

**164**

jurisdiction of the particular case and is authorized to determine it. If he transcends the limits of his authority he necessarily ceases, in the particular case, to act as judge, and is responsible for all the consequences. But with these limitations, the principle of irresponsibility, so far as respects a civil remedy, is as old as the common law itself." (Emphasis ours.)

In Beckham v. Cline (1942) 151 Fla. 481, 10 So.2d 419, 145 A.L.R. 705, where physicians made no examination but falsely certified that they had done so, the Court concluded that they were acting in a quasi-judicial capacity. The Court treated the examination requirement as a *jurisdictional* act and concluded that defendants failed to acquire jurisdiction to certify insanity and therefore lost their immunity. The Court did not discuss the immunity of witnesses and seems to have proceeded on the theory that the County Judge who ordered the restraint held no hearing and exercised no independent judgment but relied wholly upon the false certificate. In assigning importance to the examination as a jurisdictional act, the Florida Court directed attention to the fact that due process was involved and the examination was the only effective notice to the individual alleged to be mentally ill that any proceedings had been instituted. That would clearly be true as well in the instant case. The importance of the examination as a jurisdictional fact is emphasized by the fact that the statutory 3 day period within which the individual may be admitted to emergency hospitalization runs not from the date the certificate is issued but *from the date of the examination*.

In Jillson v. Caprio (1949) 86 U.S.App. D.C. 168, 181 F.2d 523, a physician was held answerable to a complaint for false imprisonment where he advised, requested or directed police officers upon his own responsibility and in violation of statutory requirements to take plaintiff into custody as being mentally ill. The Court saw no need under these circumstances to consider or discuss the immunity afforded to a "witness" or to one performing a quasi-judicial act within the limits of his jurisdiction.

We are satisfied that Mezullo v. Maletz (1953) 331 Mass. 233, 118 N.E.2d 356, on which we placed some reliance in both Dunbar and Hurley, has no application here. In that case commitment resulted from a judicial proceeding and the defendant physician was accorded immunity *as a witness*. Mezullo also noted that where a statute provided a penalty for the crime of *conspiracy* to commit to an institution for the insane a person who is not insane, such a statute did not create a *cause of action for civil conspiracy* where none existed before. Moreover, the plaintiff did not even contend that a civil action *for civil conspiracy* was known to the common law but relied wholly upon civil rights said to flow from the penal statute. The Massachusetts Court had no occasion to deal with the common law right of recovery *for false imprisonment* which exists independently of any penal statute, and certainly cannot be said to have negated in Mezullo the existence of such a common law remedy in an appropriate case.

In the instant case 34 M.R.S.A. Sec. 2259 provides a criminal penalty for wilfully causing, conspiring with or assisting another to cause the unwarranted hospitalization of a person as mentally ill, but plaintiff does not assert any civil remedy as flowing from that statute. He relies entirely upon the common law right of recovery for false imprisonment.

In holding as we do that a physician who does the acts under the circumstances alleged in this complaint is not protected either by the immunity afforded a witness or, lacking jurisdiction, that afforded one acting in a quasi-judicial capacity, we are mindful of the public policy questions involved. It is in the public interest that physicians should be reasonably protected in undertaking the duties imposed upon them by Secs. 2333 and 2334. In no sense do we depart from the position that the physician who serves as witness or in a

quasi-judicial capacity is granted a meaningful immunity from civil prosecution. He need not, for example, be concerned with the consequences of honest mistakes or errors in judgment. But no physician acting in a quasi-judicial capacity can reasonably expect the protection of immunity if he has not seen fit to perform the elementary act by which he acquires jurisdiction over the person restrained. To omit the examination, and thereafter to falsely certify that the examination has in fact been had and an opinion reached as a result of it, is more than a failure to perform a jurisdictional act—it is a matter which shocks the conscience and scarcely accords with the high standards of the medical profession. We cannot believe that physicians generally will decline a public responsibility merely because they may not be afforded immunity from the consequences of such conduct as is here alleged. We recognize that some of the symptoms and outward manifestations of mental illness frequently render it impossible for the examining physician to conduct an examination in the usual and preferable atmosphere of patient-physician relationship—

and no such rigid requirement is imposed. There must, however, be some form of personal observation by the physician upon which he can base a judgment as to the presence or absence of mental illness without relying exclusively upon the reports and observations of others. If such observation be the only "examination" which the circumstances permit, the jurisdictional requirement of the statute would nevertheless be satisfied. With jurisdiction thus acquired, the physician would thereafter enjoy the immunity afforded a quasi-judicial officer discharging his judgmental responsibilities. We are satisfied that such a result achieves a reasonable balance between the public interest and the rights of persons placed in custody or restraint.

Appeal sustained.

Case remanded to the Superior Court for further proceedings not inconsistent with this opinion.

TAPLEY, J., was present at the argument but retired before rendition of decision.