**Henry A. TAYLOR**

**v.**

**Laurence D. HERST, et al.**

Supreme Judicial Court of Maine.

Argued Jan. 13, 1988.

Decided Feb. 29, 1988.

Eugene C. Coughlin (orally), Lewis Vafiades, Vafiades, Brountas & Kominsky, Bangor, for plaintiff.

George Z. Singal (orally), Steven J. Mogul, Gross, Minsky, Mogul & Singal, Bangor, for defendant.

**1164** ■

Before McKUSICK, C.J., and
NICHOLS, ROBERTS WATHEN and
GLASSMAN, JJ.

WATHEN, Justice.

The Superior Court (Cumberland County), with the agreement of the parties in this case and pursuant to M.R.Civ.P. 72(a),[1] has reported to this Court the following issue: whether a physician is immune from civil liability when it is alleged that in the course of conducting an examination pursuant to 34 M.R.S.A. § 2333 (1978), he negligently failed to determine that a mentally ill person required involuntary commitment. We decide that plaintiff's action is barred by the immunity granted by 14 M.R.S.A. § 8111(1)(C) (1980).

The relevant facts, as agreed to by the parties, may be summarized as follows: Plaintiff Henry Taylor was arrested on November 14, 1978, and was charged with criminal trespass, driving to endanger, leaving the scene of an accident, and theft of services. The charges arose from an incident involving driving through toll booths and driving onto a restricted area at the Portland airport. Taylor was taken to the Cumberland County jail, where he began to show erratic and violent behavior, requiring five officers to subdue him. The Community Resource Counselor at the jail determined Taylor should be examined by a psychiatrist and telephoned Maine Medical Center to explain Taylor's behavior. Taylor was then released from jail on his personal recognizance and was escorted to the hospital by the Sheriff's Department. Dr. Laurence Herst, a psychiatrist at the hospital, examined Taylor and determined that he could not commit Taylor involuntarily under 34 M.R.S.A. § 2333 (1978)[2] because Taylor did not exhibit tendencies of being a danger to himself or others. After Taylor refused to voluntarily commit himself, he left the hospital. Three days later, Taylor shot and killed a woman. He was charged with murder and found not guilty by reason of insanity. Taylor then filed this suit against Dr. Herst and the Maine Medical Center, alleging that Dr. Herst and the hospital, through Dr. Herst, negligently failed to determine that he required involuntary commitment.[3] Defendant Herst argues that he is immune from civil liability while performing quasi-judicial and discretionary functions under 34 M.R.S.A. § 2333.

■ In a recent opinion in *Darling v. Augusta Mental Health Institute*, 535 A.2d 421 (Me.1987), we found that a staff psychiatrist at the Augusta Mental Health

1. The Superior Court reported the case pursuant to both M.R.Civ.P. 72(a) and (b). Because the issue of law is of sufficient importance and doubt, and because our decision will in at least one alternative finally dispose of the action, we find that the requirements of Rule 72(a) have been met.

2. 34 M.R.S.A. § 2333 (1978) *repealed by* P.L. 1983, ch. 459, § 5, in pertinent part provides:
    1. Admission. A person may be admitted to a hospital after the hospital has received an application and certificate pursuant to the following provisions.

    . . . . .

    B. The written application shall be accompanied by a dated certificate signed by a licensed physician or a licensed psychologist who practices clinical psychology. In the certificate, the physician or psychologist shall state that:
    (1) He has examined the person on the date of the certificate; and
    (2) He is of the opinion that the person is a mentally ill individual and because of his illness, poses a likelihood of serious harm as defined under section 2251, subsection 7, paragraph A, B or C.
    The date of such examination shall not be more than 3 days prior to the date of admission to the hospital.
    C. The application and accompanying certificate shall be reviewed by a Justice of the Superior Court, a Judge of the District Court, a judge of probate or a complaint justice. If that judge or justice finds the application and accompanying certificate to be regular and in accordance with the law, he shall endorse them.
    The involuntary commitment procedures in effect at the time of the incident in *Taylor* and the incident in *Darling v. Augusta Mental Health Institute*, 535 A.2d 421 (Me.1987) are found in 34 M.R.S.A. §§ 2333–2334, 2372 (1978). In 1983, these statutes were repealed and replaced by 34–B M.R.S.A. §§ 3863–3864 (Supp.1987), but the procedures remain substantially unchanged.

3. Plaintiff's counsel agrees that if judgment is rendered for Dr. Herst, it must also be rendered for Maine Medical Center.

Institute, was immune from civil liability for his determination that a patient was not mentally ill for purposes of the involuntary commitment procedure under 34 M.R.S.A. §§ 2372 (1978).[4] *Id.*, at 428. The source of the psychiatrist's immunity was 14 M.R.S.A. § 8111(1)(C) (1980) of the Tort Claims Act, which provides in pertinent part that:

> Employees of governmental entities shall be personally immune from civil liability for the following:
>
> .    .    .    .    .
>
> C. The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused; and whether or not the statute ... under which the discretionary function or duty is performed is valid.

In *Darling* there was no question that the psychiatrist was an employee of a governmental entity and the opinion focused on the second requirement: whether he was performing a discretionary function. In that regard, we stated:

> [Under section 2372] Dr. Jacobsohn's determination whether Darling was mentally ill and posed a likelihood of serious harm was the critical threshold step in the governmental decision whether Darling continued in involuntary commitment at AMHI. Exercising a professional judgment upon that initial commitment question, central to effecting the State's important responsibilities of protecting the public and treating the mentally ill, is a discretionary function and Dr. Jacobsohn is immune from suit under the Tort Claims Act for any alleged negligence in carrying it out.

*Darling*, at 428. For the same reasons, we find Dr. Herst was performing a discretionary function.[5]

■ In this case, however, we must focus on the first requirement: whether Dr. Herst is an employee of a governmental entity. *Darling* is not directly on point because Dr. Herst is employed by Maine Medical Center and is not the employee of a state mental hospital. Under the Tort Claims Act, "employee" is defined as "a person acting on behalf of the governmental entity in *any official capacity*, whether temporarily or permanently, and whether with or without compensation from local, state, or federal funds...." 14 M.R.S.A. § 8102(1) (1980) *amended by* P.L.1987, ch. 218, § 1; P.L.1987, ch. 386, § 1 (emphasis added). This broad definition of employee encompasses Dr. Herst's situation. Even though Dr. Herst is not employed by a state mental hospital, he is acting in an official capacity on behalf of the State when performing the task of determining, for involuntary commitment purposes, whether a "person is a mentally ill individual and because of his illness, poses a likelihood of serious harm." He acts under the sole authority of the statute, and his function is "central to effecting the State's important responsibilities of protecting public and treating the mentally ill." *Darling*, at 428. While acting in this capacity, Dr. Herst is immune from civil liability.[6]

Undoubtedly, in enacting the provisions of the Tort Claims Act, the Legislature had in mind that "[i]t is in the public interest that physicians should be reasonably protected in undertaking the duties imposed upon them by section 2333...." *Suke-*

---

**4.** 34 M.R.S.A. § 2372 (1978) in pertinent part provides:
> Every patient admitted to a hospital shall be examined as soon as practicable after his admission.
> The head of the hospital shall arrange for examination by a staff physician or clinical psychologist of every patient hospitalized pursuant to section 2333.

**5.** Whereas in *Darling*, Dr. Jacobsohn examined the patient under the post-admission procedures set out in 34 M.R.S.A. § 2372, Dr. Herst examined Taylor under the initial admission procedures in 34 M.R.S.A. § 2333. Both section 2372

and section 2333, however, are part of the entire involuntary commitment process discussed in *Darling*. The responsibilities and functions are similarly discretionary.

**6.** Because we find that Dr. Herst is immune under the Tort Claims Act, we need not decide whether Dr. Herst is also immune under the common law doctrine that a physician "acting in a quasi-judicial capacity ... enjoys an immunity from civil liability arising out of his acts which are a proper exercise of his discretionary and judicial functions." *Sukeforth v. Thegen,* 256 A.2d 162, 163 (Me.1969).

*forth v. Thegen*, 256 A.2d 162, 164 (Me. 1969). Without protection from civil liability, physicians would be discouraged from examining persons for involuntary commitment, thereby making the process unworkable. As we recognized in *Darling*, "[i]f release decisions were exposed to the threat of liability those individuals charged with rendering those decisions would likely become unduly responsive to one consideration—the cost of liability." *Darling*, at 429 (quoting *Cairl v. State*, 323 N.W.2d 20, 23 n. 3 (Minn.1982)).

The entry is:

Remanded to Superior Court for entry of judgment in favor of defendants.

All concurring.