STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-09-271

LINDA CLIFFORD,

        Plaintiff

   v.

                              **ORDER**

MAINEGENERAL MEDICAL CENTER et al.,

        Defendants

Before the court is a motion to dismiss and summary judgment brought by defendants MaineGeneral Medical Center and Dr. Scott Kemmerer.

A generalized summary of the underlying factual circumstances giving rise to the complaint in this case starts with the plaintiff sending an email to the Office of the Governor complaining of proposed budget cuts to mental health services. Perceiving the language of the email message as a possible threat to the Governor, the plaintiff was taken into custody by the Maine State Police and transported to MaineGeneral Hospital for determination whether she represented a threat to herself or others founded upon her previously diagnosed mental health issues. Upon examination by the medical staff, a Dr. Grimmnitz, and a counselor from the Crisis and Counseling Centers, Inc., it was concluded that she represented no such threat and was allowed to return home. Later that same day, the staff of the Crisis and Counseling Centers advised its counselor on the scene and the medical staff that the plaintiff should not have been released without the approval of Crisis and Counseling staff at a higher level than the counselor on scene. Upon request by Crisis and Counseling, or the Hospital, the State Police returned to the home of the plaintiff and using a ruse that she needed to be returned to the Hospital to sign some papers, she was returned to the emergency

room. There she was faced with another emergency room doctor, Dr. Kemmerer. It appears the Maine State Police simply left her at the emergency room and took no further action. No "blue paper" was ever prepared.

When the plaintiff discovered that her return was simply based upon an administrative decision, she became upset, which set in motion a series of events which form the significant parts of her complaint. When advised by the emergency room physician that she was not to going to be released but would be required to spend the night, plaintiff became very angry and was advised by Dr. Kemmerer that she could either voluntarily admit herself to the facility or he would initiate the involuntary "blue paper" procedure. Under those conditions, it appears that she executed the necessary documents to be admitted on a voluntary basis. During the process, it is alleged that she was required to expose herself in the presence of two male security officers and placed in a secure room, designated and equipped for psychiatric patients. The following day, upon further proceedings and considerations of the circumstances, she was released.

While there are differing accounts of the activity in the emergency room, there is no disputing that Ms. Clifford was brought to the hospital under a ruse in that the formal requirements for an involuntary commitment to the hospital were never undertaken. It is a question of fact whether Ms. Clifford voluntarily admitted herself to the mental health ward of the hospital or involuntarily signed commitment papers under a baseless threat of involuntary proceedings.[1]

The complaint in this matter was filed September 28, 2009, naming MaineGeneral Medical Center as defendant. Upon further information becoming available to the

---

[1] For purposes of this motion, the court assumes the Hospital and Crisis and Counseling Centers staff were aware, or should have been aware, that the plaintiff had a previous PTSD diagnosis and had been released by the medical staff previously the same day as showing no signs of danger to herself or others.

2

plaintiff, a first amended complaint was filed October 26, 2009, against MaineGeneral Medical Center and Dr. Harry Grimmnitz. The second amended complaint was filed August 31, 2011, naming MaineGeneral Medical Center, Dr. Harry Grimmitz, and Dr. Scott Kemmerer as defendants. A stipulation of dismissal of all claims against defendant Grimmnitz was filed October 1, 2012.

The first argument brought forth by the defendant Dr. Kemmerer is that his addition as a defendant by amendment to the complaint was beyond the two year statute of limitations in the relevant Maine Revised Statutes. Plaintiff argues that the addition of Dr. Kemmerer by amendment allows a relation back to the date of the original complaint by virtue of M.R. Civ. P. 15(c).

The court is satisfied that the amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," M.R. Civ. P. 15(c)(2), and that the amendment adding Dr. Kemmerer to the complaint does not prejudice Dr. Kemmerer in "maintaining a defense on the merits" because he "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against that party" at the outset. M.R. Civ. P. 15(c)(3)(A) & (B).

From the date of the service of the first complaint, the defendant Hospital has been aware that the action related to the activities of the emergency room staff on September 25, 2007 and that it was clearly within the scope of knowledge of the hospital as to whom were the personnel making the decisions in question. The initial pleadings alleged that the emergency room physician making the decisions forming the basis for this litigation were made by a Dr. Harry Gimmnitz and a substantial delay in the identification of Dr. Scott Kemmerer was occasioned by the defendant Hospital's inability or refusal to make the disclosure earlier in the discovery process. The court is

satisfied that as soon as plaintiff became aware of the proper identity of the physician making the decisions in question, the motion to amend was brought forward. Dismissal of the actions with respect to Dr. Grimmnitz were also timely made.

Defendant Dr. Scott Kemmerer argues that he is immune from suit because he enjoys absolute "discretionary function immunity" and is entitled to judgment as a matter of law. Defendant argues that section 8111(C) of the Maine Tort Claims Act affords absolute immunity to doctors who participate in the civil commitment process on the theory that they are government employees performing a discretionary function or duty, citing 14 M.R.S.A. § 8111(C); *Doe v. Graham*, 2009 ME 88, 977 A.2d 391. Also *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, (When medical personnel of private hospitals are evaluating individuals to determine if they should be involuntarily committed to a psychiatric hospital pursuant to state law, they are acting as state employees, entitled to discretionary function immunity pursuant to section 8111 of the Maine Tort Claims Act.)

The language of *Doe v. Graham*, suggests that "[n]ot all actions taken by physicians or hospital employees during the course of an involuntary commitment evaluation are automatically immunized from suit. We have indicated that discretionary function immunity does not extend to actions 'that so *clearly exceed* the scope of the official's authority that the official cannot be said to be acting in an official capacity.'" *Selby v. Cumberland County*, 2002 ME 80, ¶ 6 n.5, 796 A.2d 678. Under the circumstances, the court found that the immunity must be limited to those acts that are "central to effecting the State's important responsibilities of protecting the public and treating the mentally ill." Citing *Taylor v. Herst*, 537 A.2d 1163 (Me. 1988). The Court went on further to state that the actions and decisions made in furtherance of governmental policy are discretionary and immune from suit, even in instances where

4

the discretion is abused. *See* 14 M.R.S. § 8111(1)(C); *Taylor*, 537 A.2d at 1165. Finally, the Court found that the actions "each represent discretionary acts taken in furtherance of reaching the statutorily-mandated diagnosis necessary to determine if involuntary commitment was warranted in Doe's instance". *Doe v. Graham*, 2009 ME 88, 977 A.2d at 398.

In many respects the facts of this situation are similar to that found in *Doe v. Graham* upon which defendant relies to assert absolute discretionary function immunity on the part of the doctor. It is undisputed that a doctor engaged in the involuntary commitment process while employed by a hospital under contract to provide mental health services is entitled to discretionary function immunity provided by the Maine Tort Claims Act. However, in *Doe v. Graham* the so called "blue paper" process was followed and resulted in an involuntary commitment.[2] The actions by the defendants were found to be consistent with and appropriate to their responsibilities under that process. In the present case, the facts alleged by the plaintiff suggest that rather than complying with the blue paper process, they threatened the blue paper process by making it clear that she would not be released by the hospital and demanded a voluntary commitment.[3] Further, in the face of resistance, security personnel were beckoned, suggesting the possible use of physical force to prevent her from leaving the Hospital. The plaintiff alleges there was no statutorily mandated diagnosis necessary to determine if involuntary commitment was warranted. The court questions whether the threat of involuntary commitment to obtain a voluntary commitment avoids the due

---

[2] Under 34-B, M.R.S.A. §3862, if a law enforcement officer has probable cause to believe that a person may be mentally ill and presents a threat to self or others, the officer may take the person into protective custody and deliver the person immediately for examination by a medical practitioner. If the individual is found not to represent a threat, the person must be released and returned to their place of residence.

[3] It has been suggested that psychiatrists utilized by the Hospital to perform evaluations for the blue paper process prefer not to be called in during late hours because they prefer to examine patients in the morning when stressful conditions have subsided.

process of the blue paper procedure and the determination by a qualified mental health provider of a mental condition dangerous to the public or to oneself can be said to be activities acting in an official capacity. Therefore, the court determines that discretionary function immunity is not appropriate in this case.

Defendant relies on *Jenness v. Nickerson*, 637 A.2d 1152 (Me. 1994) for the proposition that government officials performing discretionary functions are shielded from liability for civil damages under the Maine Civil Rights Act, 5 M.R.S.A. §4682, insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Id* at 1155. In that decision the Law Court assumed that the immunities available to government officials under the Civil Rights Act are available to private individuals. Plaintiff argues that, at the most, defendant Dr. Kemmerer may be entitled to qualified immunity

However, whether or not qualified immunity is available within the Maine Civil Rights Act is a matter of fact based upon all of the circumstances. Therefore, the court must determine whether the defendants' conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800. The plaintiff alleges seizure of her person without due process, clearly a Fourth Amendment constitutional violation. Obviously the defendant intended to see that plaintiff was "seized" as she was placed in a secured room designed for psychiatric patients.

Whether this court uses a standard of "objective reasonableness" as suggested by *Fowles v. Stearns*, 886 F. Supp. 894 in the context of 42 U.S.C.S. §1983 or tactics that "shock the conscience" as suggested by *Jenness v. Nickerson*, 637 A.2d 1152, the availability of qualified immunity is a question for the factfinder.

6

The Hospital's policy of an inventory search of a patient is fully acceptable including a body search, particularly in the case of a person with mental health issues. *Wilson v. State*, 99 S.W. 3d 767, *R.M. v. Northern Regional Unit*, 842 A.2d 308. Whether calling for the presence of male security officers to assist in causing a female to disrobe for such a search is acceptable is another question for the factfinder.

Defendant argues that considering plaintiff's allegations one cannot conclude that there is any evidence that the defendant used physical force or threatened physical force or violence. 5 M.R.S.A. §4682(1-A). However, the court certainly expects that since she was brought to the Hospital by the Maine State Police that had she refused, there was a likelihood of the use of force. Further, when advised she would not be leaving the hospital, and further when summonsing male hospital security personnel when asked to disrobe, one cannot surmise that physical force would not have been expected should she not comply.

Defendant argues that under the circumstances of this case, raising temporary confinement to a constitutional violation is not consistent with legislative intent, among other things, that all torts are not constitutional violations. Defendant raises the issue as to whether temporary confinement constitutes such a "right" anticipated in the Act. In response, plaintiff quotes Justice Douglas in *Monroe v. Pape*, 365 U.S. 167, stating that 42 U.S.C. § 1983, ". . . should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." He goes on to cite *Vitek v. Jones*, 445 U.S. 480 (1980), concluding it has long been recognized that confinement in mental hospital represents a "massive curtailment of liberty" which "requires due process protection." For factual support, plaintiff cites to the allegation that she was forbidden by Dr. Kemmerer to leave the hospital and that hospital security guards were posted to ensure that she would remain. Plaintiff further cites *Zinermon v. Burch*, 494

7

U.S. 113 (1990), which involved hospitalization after signing a consent agreement, wherein the Supreme Court responded that the claim was sufficiently made if the defendants "disregarded their duty to ensure that proper procedures [regarding the processing of the consent form practices] were followed." *Id.* at 137. [4]

Defendant argues that because there is no evidence that the Doctor acted with a specific intent to interfere with a constitutionally protected right or interest, he cannot be held liable under the Maine Civil Rights Act. Defendant notes that the Maine Act is statutorily different than the Federal Civil Rights Act, 42 U.S.C. § 1983 in that Maine law has a "state of mind" requirement. Fundamentally, the basic foundation of intent must be established after consideration of the evidence by the fact finder. Did Dr. Kemmerer intend to confine Ms. Clifford whether or not she signed the voluntary commitment? Was he prepared to summons the on-call psychiatrist to render services late in the evening? Was he convinced, based upon his education and experience, that Ms. Clifford, in the state of mind she presented, was a person of danger to herself or others and was he performing his public service role in accordance with the mental health laws of Maine?

Defendant insists that MaineGeneral cannot be held liable under the Maine Civil Rights Act because there is no vicarious liability under the Act. Defendant notes that this court already had ruled that principles of *respondeat superior* do not apply in litigation under the Maine Civil Rights Act. However, since the court left open the possibility there might be a theory of vicarious liability if properly plead, the plaintiff persists in the claim.

---

[4] Note *In re Marcia E.*, 2012 ME 139 wherein the Court acknowledged the right of writ of habeas corpus in the event of unlawful hospitalization.

Adopting the reasoning of an article in volume 35 of the *Maine Law Review*[5], plaintiff cites *Stropes v. Heritage House Childrens Center*, 547 N. E. 2d 244 (Indiana 1989) for the proposition that a sexual attack by a staff member in a nursing home could give rise to vicarious liability on the part of the home notwithstanding the act was beyond the scope of the employee's employment on the basis that the employer had a duty to insure the safety of its patients. Defendant points out that the burden of production on motion for summary judgment is on the plaintiff, since the defendants' only burden is "to assert those elements of the cause of action for which [it] contends there is no genuine issue to be tried." Citing *Corey v. Norman, Hanson & DeTroy*, 1999 ME 196, 742 A.2d 933.

This court is not aware of any Maine precedent that adopts a strict hospital liability standard in the context of civil rights liability. The court notes *Porro v. Barnes*, 624 F.3d 1322 in the context of 42 U.S.C. 1983, (Just as §1983's plain language doesn't authorize strict liability, it doesn't authorize *respondeat superior* liability). See also, *Wolf-Lillie v. Sonquist*, 699 F.2d 864, (Section 1983 creates a cause of action based upon personal liability and predicated upon fault.) (emphasis supplied).

Plaintiff makes a claim for relief under the Maine Human Rights Act, 5 M.R.S.A. § 4621. The statute provides that it is unlawful public accommodation discrimination in violation of The Maine Human Rights Act for a public accommodation or person to discriminate or in any manner withhold from or deny the full and equal enjoyment of such accomodations to any person on account of, among other things, a mental disability. Plaintiff complains that when she was brought to the hospital by the police for the second time, the staff, knowing that she had previously been evaluated and discharged that same day, would not explain to her why she was

---

[5] Comment, *Hospital Accountability in Health Care Delivery*, 35 U. Me. L. Rev. 77 (1983)

returned to the hospital, caused her to be stripped searched, refused to allow her to return home, and would not require the on-call psychiatrist to come to the hospital for an evaluation so as to avoid the overnight confinement.

Defendant denies that the Maine Human Rights Act creates a private right of action with respect to Dr. Kemmerer. In the employment context, he cites *Miller v. Hall*, 245 F. Supp.2d 1991 (Dist. Me. 2003);[6] *Gough v. Eastern Maine Development Corp.*, 172 F. Supp.2d 221 (Dist. Me. 2001).[7] He also argues that under Title III of the federal ADA upon the which the "public accommodations" provisions of the Maine Human Rights are modeled, court have reached the same result. *Emerson v. Thiel College*, 296 F.3d 184 (3rd Cir. 2002). The defendant also cites section 504 of the Federal Rehabilitation Act, 29 U.S.C.A. § 794, providing that the individual can receive a remedy under Title VI of the Civil Rights Act of 1964 based upon any act or failure to act by any recipient of federal assistance. 29 U.S.C.A. § 794(a). Cases denying individual liability include *Taylor v. Altoona Area School District*, 513 F. Supp.2d 540 (Dist. W. Penn. 2007); *S.W. v. Warren*, 528 F. Supp.2d 282 (Dist. S. New York 2007). [8]

Plaintiff responds by arguing the plain language of the Maine statute. 5 M.R.S.A. § 4621 provides that an aggrieved person may file a civil action against the "person or persons" who committed the unlawful discrimination. Section 4592 makes it unlawful for the public accommodation or any "person" who is, among others, an employee of

[6] The individual defendant, Mr. Hall, was owner of the defendant public accommodation. The Court said, "the presence of an individual owner of a corporate defendant in a Title VII action is superfluous."

[7] This case is instructive for two reasons. First, it deals with a federal court's supposition of the definition of "employer" as would be found by the Maine Law Court utilizing cases that have suggested that the Maine Law should be interpreted in accordance with federal precedent under federal legislation. Secondly, it discusses the uncertainty of the Maine Law Court and specifically addresses whether or not it is obligated or required to follow federal interpretation on specific issues, in this case, the definition of "employer." While it discusses the term "any person" as found in 5 M.R.S.A. § 4592(1) it does not explain the specificity of the Maine Statute language which singles out "owner, lessor, lessee, proprietor, operation, manager, superintendent, agent or employee" or the place of public accommodation.

[8] The court has become aware of the recent decision in *Fuhrmann v. Staples*, 2012 ME 135. However, that decision relies on 5 M.R.S.A. §4553.

the public accommodation that discriminates against or withholds goods or services. In light of the plain language, and in the absence of Maine precedence not in the context of employment, the court declines to conclude that there is no individual liability available under the Maine Human Rights Act.

"It is settled law that the MHRA should be construed and applied along the same contours as the ADA... There are, however, differences between the two statutory schemes..." *Dudley v. Hannaford Bros. Co.*, 333F. 3d 299. While the fundamental decisions and actions are alleged to be made by the defendant doctor, within the limited precedents available, there does not seem to be clear guidance that the Maine Act would be interpreted differently as far as personal liability is concerned.

Defendants assert that the Maine Human Rights Act does not apply to medical treatment decisions, citing *Grzan v. Charter Hospital of Northwest Indiana*, 104 F.3d 116 (7th Cir. 1997)0 another case under the Federal Rehabilitation Act. It involves a counselor employed by the defendant who had engaged in a sexual relationship with the plaintiff alleging it "interfered with her treatment" for a mental condition. This case as well as *United States v. University Hospital, State University of New York at Stony Brook*, 729 F.2d 144 (2nd Cir. 1984) utilizes an interpretation of section 504 of the Rehabilitation Act and the "otherwise qualified" criteria of that law. The analysis is interesting. The Court states, "[W]here medical treatment is at issue, it is typically the handicap itself that gives rise to, or least contributes to, the need for services." That gives rise to a query: Was the plaintiff returned to the hospital in protective custody for an evaluation under the blue paper process or was she returned to the hospital for medical treatment? If she was there for medical treatment, there was no discrimination, because, contrary to her wishes, she received the goods, services, and accommodations of the hospital. If she was there under some interpretation that this was simply a second phase to a previous

protective custody proceeding, she should have been treated under those provisions and received appropriate accommodation for her diagnosed psychiatric condition. Said another way, given the circumstances of her return, was the responsibility of defendants solely to conduct an evaluation and not otherwise utilize the facilities, goods and services without the proper procedure?[9]

Defendants argue that they are entitled to summary judgment on the disability discrimination claims because there is no evidence of discriminatory animus. The plaintiff argues that there is nothing in the Maine Human Rights Act to require a finding of discriminatory animus on the part of the defendants. Again, the court questions the gravamen of the discriminatory complaint. What was the accommodation that was expected, medical treatment or a psychiatric evaluation under a specific mental health statute? The plaintiff was in the hospital precisely because her activity in sending a message to the Governor was considered in the context of her previously diagnosed mental condition. If the doctor intended to treat the plaintiff differently than other patients under the same circumstances, it seems to be a relevant question of fact.

Defendants argue that the plaintiff cannot sustain a claim under the Maine Human Rights Act because she did not request an accommodation. Plaintiff argues that she specifically requested an explanation for the reason she was returned to the hospital, and further, questioned the reason why she was required to stay overnight. Plaintiff also asserts that the defendants should have known that she needed an accommodation based upon all of the circumstances including the previous hospital visit. Obviously, this is a question of fact.

---

[9] The court is not aware of any authority in law enforcement officers to take a person into custody and deliver them to a hospital for mental health treatment in the absence of the probable cause requirement of the blue paper statute., 34-B M.R.S.A. §3862. Furthermore, it is not clear that she was in any custody when redelivered to the hospital.

12

The court finds that defendant MaineGeneral Medical Center may not be held vicariously liable under the Maine Civil Rights Act. It is entitled to summary judgment on that complaint. The court further finds that personal liability may be contemplated under the Maine Human Rights Act and Dr. Kemmerer is not entitled to summary judgment as to that claim as a matter of law. As to all other elements of the complaint against the defendant Hospital and Doctor, the motion to dismiss and summary judgment must be denied.

The entry will be:

> ORDERED: defendants' motion to dismiss and for summary judgment is GRANTED in part and DENIED in part.

The clerk may enter this order on the docket by reference.

DATED: /- /4-/3

Donald H. Marden
Superior Court Justice

13

CURTIS WEBBER
JON S. OXMAN
RICHARD J. O'BRIEN
JOHN W. CONWAY
SONIA J. BUCK

MOLLY WATSON SHUKIE
PATRICIA C. SHOREY

**LINNELL, CHOATE & WEBBER**
ATTORNEYS AT LAW
83 PLEASANT STREET
P.O. BOX 190
AUBURN, MAINE 04212 - 0190
*A LIMITED LIABILITY PARTNERSHIP*

PHONE 207-784-4563

FAX 207-784-1981

FRANK W. LINNELL
1908-1977
DONALD W. WEBBER
1906-1995
PAUL A. CHOATE
1927-2007
JOHN R. LINNELL
1938-2010

*cwebber@lcwlaw.com*

February 11, 2013

Maine Lawyers Review
PO Box 6663
Portland, ME 04103-6663

Dear Sirs:

I enclose a copy of Judge Marden's opinion in the case of *Clifford v. MaineGeneral Medical Center, et al.* which may not have come to your attention. This is a civil rights case against the hospital and one of the doctors in the emergency department who participated in committing Ms. Clifford to stay overnight in the hospital locked up in the psychiatric ward. Dr. Kemmerer has filed an interlocutory appeal in this matter and has also requested Judge Marden to report the issue of whether or not he was correct in denying summary judgment regarding plaintiff's claims under the Maine Human Rights Act.

Sincerely,

Curtis Webber

CW/pmf
Enclosure